### INCONSISTENT VERDICTS.

Circuit Court of Cuyahoga County.

B. SCHATZINGER v. NELLIE W. BOYD.

Decided, February 11, 1907.

*Trials—New Trial Granted where Verdict of Jury Inconsistent.*

Where, in an action upon a building contract plaintiff asks judgment for money spent in completing a building after defendant had abandoned his contract, and defendant in a cross-petition asks for judgment for money spent by him under a contract which he alleges was made but which was entirely different from that alleged by the plaintiff to have been made between the parties, the jury having returned a verdict in favor of plaintiff for an amount in excess of that claimed by him, and for the defendant for the amount he claimed, the verdicts of the jury are so inconsistent as to indicate that they did not comprehend the issues and a new trial will be granted.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

The defendant in error was plaintiff below, where she recovered a verdict and judgment for $1,167.28 on a building contract.

The facts as claimed by the plaintiff below are, that she and her husband negotiated with the plaintiff in error, B. Schatzinger, for the erection of a house on a lot previously purchased by her in Schatzinger's Superior Park allotment, same to be erected by Schatzinger. On the day when the final payment toward the purchase price of the lot was made, the plaintiff below, Mrs. Boyd, paid $550 additional to Schatzinger to apply upon the construction of said house. At the same time, Mrs. Boyd's husband claims to have dictated to Schatzinger's stenographer a contract which, though it was never written out, he reproduces from memory in his testimony as follows:

"This agreement made this 1st day of November, A. D. 1902, by and between Nell W. Boyd a party of the first part and Bernard Schatzinger party of the second part, witnesseth, that for and in consideration of a sum not to exceed $4,000 the receipt of $675 of which is hereby acknowledged, the said party of the second part agrees to build and erect a residence on lots 37 and 36, Superior Park Allotment, as per plans and specifications prepared by the Kauffman Architectural Company, which are hereby made a part of this contract. The balance of the payments to be secured by a first mortgage to said Bernard Schatzinger. The building to be completed as per plans and specifications on or before January 1st, 1903.

"That on the faithful completion of the work as above specified the said party of the first part is to execute to the party of the second part a mortgage in a sum not to exceed $3,325, with interest at the rate of five per cent. per annum for a term of five years. In witness whereof we have hereunto put our hands and seals this first day of November, 1902."

On cross-examination he repeats the same contract, with some verbal variations, and says, "there is another thing in that contract that was not spoken of this morning that was particularly spoken of at the time." This omission he supplies, as follows:

"The grading and pavements are included in the above sum."

After dictating this contract in the presence of his wife and Schatzinger, he left Schatzinger's office. His wife remained to sign the contract when it should be typewritten, and she did stay there until a document was produced for her to sign, which she supposed to be the contract in question. She accordingly signed it and left. Afterwards it proved that what she signed was an application for a loan. Such at least, is the version of this transaction as given by Mr. and Mrs. Boyd. Schatzinger and his stenographer deny all knowledge of any such contract having been made on that date. Schatzinger claims that he made a contract, which some two months later was reduced to writing, but dated back at Mr. Boyd's request.

This contract was as follows:

### "BUILDING CONTRACT.

"This agreement is made and entered into this nineteenth day of November, A. D. 1902, by and between Nellie W. Boyd and B. Schatzinger.

"WHEREAS, said Nellie W. Boyd owns Lot No. 37 and the northerly half of Lot No. 36, in Superior Park, and is desirous of having a dwelling house built on same and B. Schatzinger being a builder and engaged in putting up buildings,

"*Now Therefore*, it is agreed by and between the above parties that said B. Schatzinger shall have a dwelling house erected on said premises but said Nellie W. Boyd is to furnish the plans for same.

"Said B. Schatzinger is hereby authorized and instructed to contract for labor and material for said dwelling house to the extent of four thousand dollars ($4,000) and said Nellie W. Boyd agrees to pay for said labor and material as bills therefor mature.

"It is further mutually agreed that no profit will be charged on any labor or material contracted for on said dwelling house by said B. Schatzinger, but that the same is a matter of accommodation.

"It is further mutually agreed that said B. Schatzinger will procure a first mortgage loan on said property upon the completion of the building and the improvements upon the lot for not more thatn thirty-five hundred dollars ($3,500) and at a rate of interest not more than six per cent. per annum.

"NELLIE W. BOYD,

"By COURT BOYD,

"B. SCHATZINGER."

This document was actually signed December 27, 1902, but apparently without any express authority having been given by Mrs. Boyd to her husband thus to sign her name.

Mr. Boyd explains this transaction, as follows: He says he went to Schatzinger's office December 26, 1902, and asked him for a copy of the contract. Schatzinger said there was no contract written. I asked him what had become of the contract I dictated that day, the contract that my wife signed. He said my wife had never signed a contract in his office. I asked him what she had signed, and he said she had signed an application for a loan. I said that I thought he was playing a very mean game to try to take advantage of us and back out of the contract, on which he had received the money.

He said he would rectify that and he would go ahead and complete the house and he would get the money to do it.

I said that is all we want, we simply want the contract carried out. He said that he was sorry he could not get the money and that he would make other arrangements to get it. That is what he said. I asked him why the contract had not been signed; the one that I dictated and the one that we paid him the money on, and he said he did not think it was a proper contract to sign.

On the following day Schatzinger brought to Boyd the document last above quoted, and said he would like to have that signed so that they could take it up with Mr. Creer to get the money and go ahead with the building. That was what he said. He brought in that statement; he brought in this contract; my wife was not at home, and had not been in the city since the 1st of December. He asked me to sign that contract and we would go up to see Mr. Creer at the Cleveland Loan Company. I signed the contract with him and we went up to see Mr. Creer to get the money to complete the house.

They failed to negotiate a loan at that time on terms satisfactory to Mr. Boyd, whereupon he said to Mr. Schatzinger that "I thought he was trying to beat me and I did not want anything further to do with him; that he would either carry out the original contract that was made, or that I would go ahead and complete the building, which I did."

Prior to this time the building had been for two months in the course of erecting with money supplied by Schatzinger, from the $550 advanced by Mrs. Boyd, and when that was exhausted, out of his own pocket to the extent of $554.78 additional.

Mr. Boyd having failed or declined to provide further money as bills matured, Schatzinger declined and dropped the matter, and the Boyds went ahead and completed the building substantially in accordance with specifications made by the Kauffman Architectural Company. This company was closely connected with Schatzinger in business, and had its office on Schatzinger's allotment. Schatzinger introduced the Boyds to the architect who prepared the plans and specifications and who had more or less to do thereafter with overseeing the construction of the house.

After the completion of the house Mrs. Boyd filed her petition alleging that she had paid out altogether $5,406.78 and for the excess over $4,000 named in the first contract she asked judgment. Attached to her petition is an itemized list of expenditures, which is not, however, so itemized as to check up with the vouchers which were afterwards introduced in evidence. The answer filed by Schatzinger denied that he had entered into the contract set forth in the petition, but admitted that he had entered into a verbal contract prior thereto, which was afterwards embodied in the document which Boyd signed on behalf of his wife. Schatzinger admits that under this verbal contract he began the construction of the house and continued the same until the refusal and failure of the plaintiff to furnish him any more money. In the second and third causes of action he sets up the $554.78 advanced by him and a mechanic's lien which he perfected to secure the same, and asks a judgment and decree thereon.

In Mrs. Boyd's reply she admits her husband was looking after the erection of the house mentioned in the answer; denies defendant's version of the verbal contract and denies that the said paper writing purporting to be a contract, which the said defendant sets up in his answer and cross-petition, was ever signed or agreed to by her, and that the same ever became a contract between said parties. She says that after the said verbal

contract was entered into as set up in her petition, this plaintiff urged the said defendant to put the original contract in writing, which he agreed to do and thereupon wrote the paper which he claims to be a contract and which he has set up in his answer and sent it to her, at which time her husband, James Court Boyd, in order to submit it to his counsel signed in pencil the name of this plaintiff in order to show counsel a completed contract and to ask his opinion about it before agreeing to it.

Upon the advice of said counsel the said proposed draft of a contract was rejected, and that the said Boyd carried said contract into the office of said defendant and told him that that was not the contract that was made with the defendant, and that he would not agree to the terms as specified in said proposed draft of a contract as it did not conform to the original agreement. After some further conversation with the defendant, who told the said Boyd to draw a contract to suit himself, the said Boyd left the office of the defendant and inadvertently left the said proposed draft of contract on the desk of said defendant and that he afterward carried a proposed contract in writing to the defendant which conformed to the agreement as originally made which the defendant never signed or returned to this plaintiff.

This plaintiff therefore denies that she or anybody for her ever made a contract as set up in the answer and cross-petition of the defendant, and she denies that any part of the work done on said house was done under said contract, and she denies that any payments were ever made upon said contract.

It will be observed that this version of the transaction of December 27th, 1902, between Schatzinger and Boyd is quite different from the version given by Mr. Boyd on the witness stand, and we think it extremely improbable that any business man of experience would have entered into so loose a contract as the Boyds claim was assented to by Schatzinger verbally November 1, 1902.

The jury having found otherwise upon this issue, we would not, however, disturb the verdict on that ground. But it is perfectly evident that the jury had no proper conception of what their verdict should be in the premises.

The petition prayed judgment for $1,406.78, which, with interest to the first day of the term at which the verdict was returned, could have amounted at the most to but $1,652.96. The verdict for plaintiff, is, however, including interest, $1,820.86. They also returned a verdict for the defendant, on his counterclaim for $652.58, which is substantially the amount of the $554.78 paid by Schatzinger out of his own pocket, together with interest.

Upon the issues joined, a verdict for one party was utterly inconsistent with a verdict for the other. If the plaintiff was entitled to recover at all it was for the amount paid by her in excess of the contract price of $4,000 and no more. In that event the defendant would be entitled to nothing, because whatever he had paid out of his own pocket over and above the contract price of $4,000 should have been paid by him anyhow.

On the other hand, if the defendant was entitled to any verdict, it could only be upon the theory that it was for moneys advanced by him and for which he was entitled to be reimbursed by Mrs. Boyd. It may be said, however, that the net result of these erroneous verdicts is to give the plaintiff, including interest, the sum of $1,167.28, or exclusive of $992.43, which is $413.35 less than the amount claimed in her petition. If we could reconcile this result with the conclusions which are reached as to the rights of the parties, from our examination of the contract claimed by the plaintiff below, the plans and specifications referred to therein and the proof as to payments made, we should not allow the mere informality of the verdict to invalidate it. But our examination shows that gas fixtures, decorating, electric light writing, mantels, extra painting, extra coal, interest on loan, cost of abstract of title, parquetry flooring, commission on loan, finishing of the attic, lighting fixtures and other items not mentioned in the contract or specifications nor depicted in the plans of the house, should have been deducted from the expenses. These deductions exceed by considerable the deduction which seems actually to have been made by the jury.

This perhaps might be rectified by a remittitur if it were possible from the bill of exceptions to arrive definitely at the amount to be remitted.

We are unable, after a good deal of effort in this direction, to unravel the mazes of the accounts submitted in the pleadings, evidence and briefs, so as to arrive at a satisfactory result along this line. It would require the combined services of a builder or architect and an expert accountant to solve the question. We doubt if the jury could have found from the evidence just how much the plaintiff was entitled to, although we are certain that they found more than the plaintiff was entitled to.

Because of the jury's seeming lack of comprehension of the manner in which they should return their verdict and the manifest irregularities in the verdict as returned, we incline to the opinion that the jury did not give this case proper consideration, and we, therefore, reverse the judgment below and remand the case for a new trial.